IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02786-CBS

DANAE J. WILLIAMS,

        Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

Magistrate Judge Craig B. Shaffer

        This action comes before the court pursuant to Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381, *et seq*., for review of the Commissioner of Social Security's final decision denying Danae Williams' application for Supplemental Security Income ("SSI"). Pursuant to the Order of Reference dated June 12, 2015, this civil action was referred to the Magistrate Judge for all purposes. *See* Doc. 24. The court has carefully considered the Complaint (filed October 10, 2014) [Doc. 1], Defendant's Answer (filed February 5, 2015) [Doc. 10], Plaintiff's Opening Brief (filed April 1, 2015) [Doc. 14], Defendant's Response Brief (filed May 20, 2015) [Doc. 18], Plaintiff's Reply Brief (filed May 28, 2015) [Doc. 19], the entire case file, the administrative record, and the applicable law. For the following reasons, the court reverses and remands the Commissioner's Decision.

## BACKGROUND

In June 2011, Danae Williams applied for SSI, alleging a disability onset date of July 1, 2009. Doc. 11-3 at 2. Ms. Williams alleged that her ability to work was limited by the following conditions: "herniated discs," "disc degeneration," "bulging discs," "bad hips," "early osteosrthritis [sic]," and "muscle spasms." *Id.* at 3. Claimant was born on November 19, 1986, and she was 22 years old on the onset date of her alleged disability. *Id.* She completed the 12th grade and has previous work experience as a potato sorter and fast food worker. *Id.* at 9; Doc. 11-2 at 31-32. After the denial of Ms. Williams' initial application, she requested a hearing. Doc. 11-2 at 11. The presiding Administrative Law Judge ("ALJ"), Richard J. Maddigan, continued the case on November 5, 2012, in order to obtain more substantive evidence and held a video hearing on March 19, 2013. *Id.*

On March 25, 2013, the ALJ issued an unfavorable decision that denied benefits to Ms. Williams. *Id.* at 8. The ALJ's Decision followed the five-step process outlined in the Social Security regulations.[1] At step one, the ALJ found that Claimant had not engaged in substantial gainful employment since June 29, 2011. *Id*. at 13. At step two, the ALJ found that Claimant had the following severe impairments: (1) degenerative disc disease; and (2) obesity. *Id*. Claimant's impairments related to her knees and wrists, as well as her depression, were found to be non-severe. *Id.* at 13. At step three, the ALJ found that Ms. Gunn did not have an impairment that met or medically equaled a listed impairment. *Id*.

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to past relevant work; and, if not (5) could perform other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). After step three, the ALJ is required to assess the claimant's functional residual capacity. 20 C.F.R. § 416.920(e). The claimant has the burden of proof in steps one through four whereas the Social Security Administration bears the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

>    The ALJ found Ms. Gunn has the following Residual Functional Capacity ("RFC"):
>
>> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can occasionally lift 10 pounds; she can sit up to two hours in an eight hour workday; she can stand and walk up to six hours in an eight hour workday; she can frequently perform overhead reaching and continuous reaching otherwise; there are no limitations on handling, fingering, feeling, pushing and pulling; she can occasionally stoop, kneel, crawl; the claimant can occasionally tolerate heights and extreme cold; she can rarely bend, squat, or crouch. She requires a break every 15 to 30 minutes to alternate positions to mitigate pain.

*Id.* at 13-14. The ALJ concluded that although Claimant's medically determinable impairments could reasonably be expected to cause her alleged symptoms, the evidence did not support a finding that she was as limited as she claimed. *Id*. at 14. The ALJ provided four reasons for finding that the allegations lacked sufficient credibility to support a finding of disability: (1) "the claimant went ten years without treatment for her cervical spine;" (2) "[s]he provided mixed information about the onset of her back and hip pain to her different providers;" (3) "there is little objective evidence to support the severity of her limitations;" and (4) "[i]n addition to her chronic narcotic use, the claimant appears to be prone to symptom magnification." *Id.* at 14-15.

At step four, the ALJ determined that Ms. Williams is unable to perform any of her past relevant work as a potato sorter or a fast food worker "due to the requirement of frequent positional changes to mitigate back pain." *Id.* at 17. The ALJ then found at step five that Claimant is able to perform other jobs existing in significant numbers in the national economy, namely, parking lot attendant (light work), information clerk (light work), store facility rental clerk (light work), call out operator (sedentary work), telequotations clerk (sedentary work), and surveillance system monitor (sedentary work). *Id.* at 18. In doing so, the ALJ relied on the vocational expert's (VE) testimony, which he determined to be consistent with the information

contained in the Dictionary of Occupational Titles ("DOT"). *Id.* Accordingly, the ALJ concluded that Claimant was not disabled under the Act. *Id.*

Following the ALJ's decision, Ms. Williams requested review by the Appeals Council. *Id*. at 2. The Appeals Council denied her request on September 8, 2014. *Id*. As a result, the ALJ's Decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). On October 10, 2014, Ms. Williams properly filed this civil action in the United States District Court for the District of Colorado. Doc. 1; *see* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the [Commissioner] made after a hearing to which [s]he was a party … may obtain a review of such decision by a civil action commenced within sixty days after the mailing to [her] of notice of such decision ….").

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The court may not reverse an ALJ simply because it may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (citation omitted). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.

1992) (citation omitted). The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070 (citation omitted). Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (citation omitted).

## ANALYSIS

On appeal, Ms. Williams contends that the ALJ erred by: (1) failing to obtain an reasonable explanation from the VE regarding a discrepancy between his testimony and the job descriptions found in the Dictionary of Occupational Titles ("DOT"); (2) basing disability decision on availability of six jobs identified by the VE that are precluded by the residual functional capacity ("RFC") limitations; (3) failing to apply the exact limitations found in the opinion of the consulting examining physician, Dr. Easchief; (4) rejecting the opinion of Dr. Rendler, her treating physician, without stating valid reasons; and (5) failing to address the opinion of Dr. Valette on the existence of mental impairments and associated limitations. Doc. 14 at 4. Because we conclude the ALJ did not follow the correct legal standards in considering the VE's testimony, we reverse and remand for further proceedings. We will not reach the remaining issues raised by Ms. Williams because they may be affected by the treatment of this case on remand. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**I.    Vocational Expert's Testimony**

On appeal, Ms. Williams argues that the ALJ erred in relying on the VE's testimony as substantial evidence of the existence of other suitable jobs in the national economy. Specifically, Claimant takes issue with the ALJ's failure to resolve apparent inconsistencies between the VE's

opinion regarding Ms. Williams' ability to perform the six occupations identified at the hearing and the specific requirements of each job listed in the DOT. Doc. 14 at 25-26. Claimant further asserts that she is entitled to an immediate award of benefits rather than a remand for further administrative proceedings because additional fact-finding would be futile given the fact that her RFC limitations preclude other work. *Id.* at 38-39. In response, the Commissioner contends that remand is necessary here because "[the ALJ] failed to clearly articulate the extent to which he accepted the various opinions of consultative physician Dr. Easchief, and his poor articulation resulted in confusing and unhelpful testimony from the vocational expert." Doc. 18 at 5.

"A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite [her] impairments: the claimant's maximum sustained work capability." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988). "If the ALJ concludes that the claimant cannot perform any of [her] past work with [her] remaining RFC, the ALJ bears the burden at step five to show that there are jobs in the regional or national economies that the claimant can perform with the limitation the ALJ has found [her] to have." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999) (citing *Thompson*, 987 F.2d at 1487). The Tenth Circuit has held that "the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("Questioning a vocational expert about the source of his opinion and any deviations from a publication recognized as authoritative by the agency's own regulations falls within [the ALJ's duty to develop the record]."). Similarly, Social Security Ruling 00-4p requires a reasonable explanation for conflicts between a VE's testimony and the

DOT relating to any occupational information. SSR 00-4p, 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000).

At the hearing, the ALJ posed the following hypothetical to the VE:

> Now if I had an individual age 24 as of the protected filing date. If that individual were consistent with the findings from Dr. Jaime Easchief. Was limited to occasional lifting 10 pounds, sitting for two hours, stand six, walk six. Frequent overhead reaching, continuous other reaching. No limits on handle, finger, feel, or push or pull. Only occasional stoop, kneel, crouch, or crawl. Occasional exposure to heights and extreme cold. Would require breaks every 15 to 30 minutes to sit and mitigate pain. Rarely bend, squat, crouch, or stoop.

Doc. 11-2 at 35-36. While the VE opined that an individual with these limitations could not do any of Ms. Williams' prior work activities, he identified three sedentary jobs ("call out operator," "telephone quotation clerk," and "surveillance systems monitor") and three light jobs ("parking lot attendant," "information clerk," and "storage facility rental clerk") that would be suitable for such an individual. *Id.* at 37-39.

Per the DOT, "[s]edentary work invoves [sic] sitting most of the time, but may involve walking or standing for brief periods of time." *See* DICOT 237.367-014 (call-out operator); DICOT 237.367-046 (telephone quotation clerk); DICOT 379.367-010 (surveillance-system monitor). The ALJ acknowledged the facial conflict during the hearing, "I'm somewhat concerned that we're identifying sedentary jobs where sitting is limited. How do you account for this?" Doc. 11-2 at 37. However, the VE's response did not explain how the selected sedentary jobs survived the strict two-hour sitting limitation. *See id.* ("Well I tried to identify sedentary jobs due to the occasional lifting of 10 pounds…."). Likewise, the ALJ's subsequent questions to the VE regarding the use of "positional change" breaks to mitigate Claimant's pain do not provide a reasonable explanation because they were discussing breaks from standing as opposed to sitting positions. *See id.* at 41-43 (VE testified, "[i]t's hard for me to interpret what the doctor

was saying. I mean initially my response was the break would be a positional change from standing to sit down to get off their feet, the individuals feet and take a break from standing to a sitting position."). Moreover, the VE provided no testimony to support the contention that positional changes, even allowed in fifteen-minute intervals, would enable an individual with a two-hour sitting limitation to do a job that entails sitting for most of an 8-hour day.

Furthermore, although the ALJ found Ms. Williams to have the residual functional capacity to do sedentary work, he also relied on the three light jobs identified by the VE as evidence of the existence of suitable work.[2] The ALJ's failure to investigate how these higher-level jobs were compatible with Claimant's RFC is problematic because it appears that the VC only considered Ms. Williams' lifting limitation in determining that these occupations were suitable. Doc. 11-2 at 38-39 ("But there are light duty jobs that would be okay with the 10 pound lifting and I could provide a couple of those jobs for you as well."). Importantly, the ALJ's Decision fails to address these inconsistencies. Indeed, it states "[p]ursuant to SSR 00-4p, the [ALJ] has determined that the vocational expert's testimony is consistent with the information contained in the [DOT]." *Id.* at 18. As such, the ALJ erred in relying on the VE's testimony to support his determination of non-disability.

The court is not suggesting that Claimant should be found disabled on remand, rather the court finds remand necessary in order for the ALJ to engage in additional fact-finding and to

---

[2] The DOT describes how an occupation's strength requirements impact the decision to classify a job as light work:
> Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rate Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

*See* DICOT 915.473-010 (parking lot attendant); DICOT 237.367-018 (information clerk); DICOT 295.367-026 (storage facility rental clerk).

clarify his reasoning in the Decision. The court recognizes that there could be valid explanations for conflicts between the VE's testimony and the DOT, but it is the ALJ's duty to elicit this information. *See Haddock*, 196 F.3d at 1092-93 ("[a] valid explanation would be that a specified number or percentage of a particular job is performed at a lower RFC level than the Dictionary shows the job generally to require."). Accordingly, the court must reverse the Decision and remand this case to allow the ALJ to apply the correct legal test.

## CONCLUSION

Based on the foregoing reasons, it is ORDERED that the Commissioner's Decision is REVERSED and this case is REMANDED to the Commissioner for further proceedings consistent with this order and judgment.

DATED at Denver, Colorado, this 27th day of September, 2016.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge